FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAY 0 6 2015

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MELANIE MORGAN,

    Plaintiff,

v.

KALKA & BAER LLC

    Defendant.

CIVIL ACTION
FILE NO. 1:15-CV-1601

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Melanie Morgan ("Morgan" or "Plaintiff") files this Complaint

against Defendant Kalka & Baer LLC ("Defendant") alleging violations of the

Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") and the Fair Labor

Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA").

## INTRODUCTION

1.

This is a civil rights action for race discrimination and retaliation in

violation of Plaintiff's rights under Section 1981. Plaintiff is a former employee

of Defendant. Plaintiff brings this action because Defendant subjected her to

racial discrimination. After Plaintiff complained about Defendant's

discriminatory practices, Defendant terminated Plaintiff's employment.

2.

This is also an action for unpaid wages from Defendant for all hours

Plaintiff worked "off the clock" for which she did not receive compensation, all

unpaid overtime premium pay from Defendant for all hours Plaintiff worked in

excess of 40 hours per week, and liquidated damages pursuant to the FLSA.

## JURISDICTION AND VENUE

3.

Plaintiff's claims under Section 1981 and the FLSA present federal

questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

4.

Pursuant to 28 U.S.C. § 1391, this Court is an appropriate venue for

Plaintiff's claims because all of the parties reside and/or conduct business within

the Northern District of Georgia and the unlawful employment practices giving

rise to Plaintiff's claims occurred within the Northern District of Georgia.

## PARTIES

5.

Plaintiff resides in the Northern District of Georgia and is a citizen of

Georgia. Plaintiff was an employee of Defendant at all times material to this

Complaint.

6.

Defendant, a limited liability company, is a personal injury law firm

located in Atlanta, Georgia.

7.

Defendant's owners are Anthony "Tony" Kalka and Arthur "Bryan" Baer

are both white males.

8.

Plaintiff was employed by Defendant and worked at its Atlanta, Georgia

location, where all or substantially all of the unlawful conduct giving rise to the

Complaint occurred.

9.

Defendant is a covered employer and at all relevant times employed

Plaintiff within the meaning of the FLSA.

10.

3

Defendant transacts business in the Northern District of Georgia and has an annual gross volume of business in excess of $500,000.

11.

Defendant is subject to this Court's jurisdiction and may be served with process through its registered agent for service of process, Arthur "Bryan" Baer, at 615 Longwood Drive, N.W., Atlanta, Georgia 30305.

## FACTUAL ALLEGATIONS

12.

Plaintiff began employment with Defendant on or about September 9, 2013 as a Case Manager / Paralegal.

13.

Plaintiff is African American. She was one of only two African American employees that worked in Defendant's office.

14.

In October 2013, Defendant moved office locations. Although Plaintiff initially picked an office located near the entrance, Tony Kalka told Plaintiff that her office would be in the back of the office, near the storage closet.

15.

4

In October 2013, Tony Kalka told Plaintiff and Eve Poythress, an African American paralegal, that they were responsible for cleaning the office. Plaintiff was told that she had to clean the coffee area and coffee machine, clean the windows, stock and organize coffee products, and stock the refrigerator with water and alcohol. Defendant did not ask white employees to clean the office.

16.

In November 2013, Plaintiff complained to attorney Renee Smith, a white female, that she and Eve Poythress were the only employees who were required to clean, and that they were being singled out because of their race (African American). Renee Smith told Plaintiff that she was not asked to clean the office.

17.

On December 18, 2013, Tony Kalka, through another employee, directed Plaintiff to clean a motorcycle in the office lobby and make it shiny.

18.

5

On December 18, 2013, Plaintiff complained to Renee Smith that she was again being asked to clean, and that she was being singled out because of her race. Ms. Smith stated that she would tell Tony Kalka and Bryan Baer about their conversation.

19.

In December 2013, Defendant gave a white paralegal, who began her employment with Defendant after Plaintiff, and who had substantially less experience than Plaintiff, a Christmas bonus that was three times the amount that Defendant gave Plaintiff.

20.

In January 2014, Tony Kalka told Plaintiff that she did not need to come to work on Martin Luther King Day "because [Plaintiff is] black."

21.

On January 17, 2014, Renee Smith told Plaintiff and Eve Poythress that they had the day off on Martin Luther King Day because they are black.

22.

Defendant only gave Martin Luther King Day off to black employees.

6

23.

White employees complained to Bryan Baer that they did not get Martin Luther King Day off.  In January 2014, a white employee asked Bryan Baer if he did not like black people, and he responded: "No. I don't. Can't you tell?  That's why I keep them in the back of the office."

24.

Throughout the course of Plaintiff's employment with Defendant, Bryan Baer and Tony Kalka invited white employees, including white paralegals and law clerks, to Capital City Country Club one to two times per month.  However, Eve Poythress and Plaintiff, both African American, were never invited to go to the Country Club.

25.

Throughout the course of Plaintiff's employment with Defendant, she observed Tony Kalka say "Stay Black" several times to Eve Poythress, an African American employee.

26.

7

On February 17, 2014, Plaintiff noticed that her pay rate was reflected as $12.26 per hour, and not her actual rate of pay ($15.00 per hour). When Plaintiff inquired about this error, Bryan Baer informed Plaintiff that since she was not classified as an independent contractor anymore, and was now considered an employee, Plaintiff's hourly rate of pay was reduced because Plaintiff was supposedly responsible for paying half of the payroll taxes.

27.

On February 18, 2014, Plaintiff called the IRS and reported this information.

28.

On February 21, 2014, Tony Kalka and Bryan Baer called a meeting with Plaintiff and three other employees wherein Tony Kalka stated that they were all "canned," their phones, e-mails and computers were locked, and that they were fired for "causing too much drama." Bryan Baer stated that he had spent too much money that week, and he was tired of the unnecessary drama.

29.

8

Defendant invited all three employees that were fired in the February 21 meeting back to work, and did not ultimately terminate them. However, Plaintiff was never contacted by Defendant after her termination or invited back to work.

30.

Defendant misclassified Plaintiff as an independent contractor under the FLSA from September 9, 2013 through December 31, 2013.

31.

On or about November 2013, Plaintiff asked Renee Smith if she was entitled to overtime compensation when she worked more than 40 hours per week. Ms. Smith said she did not know, but that she knew that as an attorney, she was exempt from overtime compensation.

32.

As of January 1, 2014, Defendant changed Plaintiff's FLSA classification, and claimed that Plaintiff was an employee exempt from overtime under the FLSA's administrative exemption.

33.

9

Throughout the course of Plaintiff's employment with Defendant, she regularly worked in excess of 40 hours per week, but she was never paid time and a half overtime.

34.

On January 22, 2014, Plaintiff asked Bryan Baer about being compensated overtime when she worked more than 40 hours per week. Bryan Baer explained that Plaintiff was now classified as an administrative employee who was not entitled to overtime at time and a half rate. Mr. Baer stated that Plaintiff could only receive "straight time" pay if she worked more than 40 hours per week.

35.

After Plaintiff engaged in protected conduct, Defendant terminated Plaintiff.

36.

Throughout the course of Plaintiff's employment with Defendant, she regularly worked "off the clock" without any compensation, and was required to:

(a) E-mail and call clients from home;

(b) Update clients and insurance adjusters with the status of the case from home; and

(c) Respond to e-mails from Tony Kalka and Bryan Baer before and after working hours.

10

37.

Defendant is aware that Plaintiff worked overtime, and worked "off the clock," because it directed her to perform this work.

38.

Defendant failed to accurately record time worked, and failed to provide accurate wage statements to Plaintiff identifying all the hours that they worked.

39.

Defendant's failure to pay Plaintiff overtime at a rate of one and a half times her regular rate for all hours worked in excess of 40 hours per week was willful and in bad faith.

40.

At all relevant times, Defendant knew or should have known that its wage and hour practices were improper, and that the FLSA required it to pay its employees an overtime premium for hours worked in excess of 40 per workweek, yet it continued to violate the FLSA.

41.

11

Defendant was put on notice of this unlawful, unfair, and deceptive practice because Plaintiff complained to Defendant about not being compensated overtime wages.

**COUNT I**
**RACE DISCRIMINATION – 42 U.S.C. § 1981**

42.

Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

43.

In December 2013, Defendant paid a white paralegal with substantially less experience a Christmas bonus that was more than three-times the amount of Plaintiff's Christmas bonus.

44.

Defendant's stated reason for terminating Plaintiff's employment is pretext for racial discrimination.

45.

Defendant terminated Plaintiff because of her race.

46.

12

Defendant's discriminatory termination of Plaintiff was in violation of

Section 1981.

47.

Defendant willfully and wantonly disregarded Plaintiff's rights under

Section 1981, and Defendant's discrimination against Plaintiff was undertaken in

bad faith.

48.

As a result of Defendant's discriminatory termination of Plaintiff, Plaintiff

has suffered lost compensation and other benefits of employment, emotional

distress, inconvenience, loss of income, humiliation, and other indignities.

49.

Pursuant to Section 1981, Plaintiff is entitled to damages including, back

pay and lost benefits, front pay and/or reinstatement, compensatory damages,

punitive damages, attorneys' fees and costs of litigation pursuant to 42 U.S.C. §

1988, and all other relief recoverable under Section 1981.

## COUNT II
## RETALIATION – 42 U.S.C. § 1981

50.

Plaintiff incorporates by reference all preceding paragraphs of this

Complaint.

51.

Plaintiff engaged in protected activity under Section 1981 by making

internal complaints to attorney Renee Smith, alleging racial discrimination.

52.

Defendant's actions, in subjecting Plaintiff to retaliation for engaging in

protected activity by complaining or, and opposing, race discrimination,

constitute unlawful intentional retaliation in violation of Section 1981.

53.

14

Defendant willfully and wantonly disregarded Plaintiff's rights, and

Defendant's retaliation against Plaintiff was undertaken in bad faith.

54.

As a result of Defendant's unlawful actions, Plaintiff has suffered lost

compensation and other benefits of employment, emotional distress,

inconvenience, loss of income, humiliation, and other indignities.

55.

Pursuant to Section 1981, Plaintiff is entitled to damages, including back

pay, and lost benefits, front pay and/or reinstatement, compensatory damages,

punitive damages, attorneys' fees, and costs of litigation pursuant to 42 U.S.C. §

1988, and all other relief recoverable under Section 1981.

## COUNT III
## FAIR LABOR STANDARDS ACT:  UNPAID OVERTIME WAGES

56.

Plaintiff re-alleges and incorporates by reference all prior paragraphs of the

Complaint.

15

57.

The overtime wage provisions set forth in the FLSA apply to Defendant and Plaintiff.

58.

As a result of Defendant's willful failure to compensate Plaintiff at a rate not less than 1 ½ times the regular rate of pay for work performed in excess of 40 hours in a workweek, as well as for all hours worked by Plaintiff, Defendant has violated the FLSA, 29 U.S.C. §§ 201 *et seq*.

59.

As a result of Defendant's willful failure to record, report, credit and/or compensate Plaintiff, Defendant has failed to make, keep and preserve records sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq*.

60.

As a result of Defendant's actual knowledge, through Plaintiff's supervisors, that she was performing work in excess of 40 hours per workweek, and Defendant's policy and practice that did not allow Plaintiffs to record all hours worked, Defendant willfully violated the FLSA.

61.

Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

62.

Defendant did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff.

63.

As a result of Defendant's FLSA violations, Plaintiff is entitled to recover from Defendant (a) unpaid overtime wages for all of the hours worked by Plaintiff, as overtime compensation, (b) unpaid "off the clock" work performed by Plaintiff; (c) liquidated damages for Defendant's willful violations of the FLSA, and (d) the unreasonably delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT IV
## FAIR LABOR STANDARDS ACT: RETALIATORY DISCRIMINATION AND DISCHARGE UNDER 29 U.S.C. § 215(a)(3))

64.

Plaintiff re-alleges and incorporates by reference all prior paragraphs of the

Complaint.

65.

Plaintiff engaged in protected activity under the FLSA.

66.

Defendant subjected Plaintiff to an adverse job action when it terminated

her.

67.

Defendant terminated Plaintiff for engaging in protected activity.

68.

Defendant's retaliatory conduct injured Plaintiff.

69.

Defendant intentionally and willfully violated the FLSA by terminating

Plaintiff.

18

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a TRIAL BY JURY and the following

relief:

(a)   Full back pay from the date of Plaintiff's termination, taking into
      account all raises to which Plaintiff would have been entitled but for
      his unlawful termination, and all fringe benefits of employment, with
      prejudgment interest thereon;

(b)   Reinstatement to Plaintiff's former position with Defendant or in the
      alternative, front pay to compensate Plaintiff for lost future wages,
      benefits, and pension;

(c)   Compensatory damages, in an amount to be determined by the
      enlightened conscience of the jury, for Plaintiff's emotional distress,
      suffering, inconvenience, mental anguish, loss of enjoyment of life
      and special damages;

(d)   Punitive damages in an amount to be determined by the enlightened
      conscious of the jury to be sufficient to punish Defendant for their

conduct toward Plaintiff and deter Defendant from similar conduct in the future;

(e)   An award of unpaid wages for all hours worked in excess of 40 in a workweek at a rate of 1 ½ times the regular rate of pay due under the FLSA using the following common damages methodology: ((Annual Salary ÷ 52) ÷ 40) X Total Number of Overtime Hours Worked X 1.5 X 2;

(f)   An award of liquidated and/or punitive damages as a result of Defendant's willful failure to pay for all hours worked in excess of 40 in a workweek at a rate of 1 ½ times the regular rate of pay pursuant to 29 U.S.C. § 216;

(g)   An award of liquidated damages for Plaintiff's lost wages suffered as a result of retaliation under the FLSA;

(h)   An award of prejudgment and post-judgment interest;

(i)   Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

(j)   Judgment against Defendant for damages incurred by Plaintiff;

(k)     Judgment against Defendant in such an amount as willfully and

adequately compensate Plaintiff; and

(l)     Other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

This 6th day of May, 2015.

Respectfully submitted,

s/Melanie S. Morgan
Melanie S. Morgan
melaniemorgan2009@gmail.com